Newark Ledger Company et al., respondents,

v.

Lucius T. Russell et al., appellants.

[Submitted February 16th, 1945. Decided April 19th, 1945.]

On appeal from a decree of the Court of Chancery wherein Vice-Chancellor Fielder filed the following opinion:

"The relief sought by complainants is restraint against defendants from further prosecuting certain suits pending against complainants, or some of them, and from instituting other threatened litigation involving complainants. The ground on which relief is sought is that since 1937 defendants have brought several suits against complainants or some of them, wherein the subject-matters of the pending and threat-

ened litigation were in issue and wherein defendants had full opportunity to establish the validity of the claims now asserted; that having failed to establish their rights in previous litigation they should not now be permitted to re-assert those claims; that the rights thus asserted by defendants are barred by estoppel and releases and that the pending suits have been brought and others are threatened for the purpose of vexing and harassing the complainants with intent to injure them in their reputation and business. If the complainants have made out a case (and I conclude they have), they are entitled to the relief sought. *Mendel* v. *Berwyn Estates, 109 N. J. Eq. 11; Russell* v. *Russell, 127 N. J. Eq. 555.*

"The complainants herein are Newark Morning Ledger Co. (hereinafter called Ledger Co.), a corporation which owns and publishes a daily and Sunday newspaper in Newark having a circulation throughout northern New Jersey; Cortland Corporation, a corporation owning preferred stock in Ledger Co.; Staten Island Advance Co. (hereinafter called Advance), a corporation owning common stock of Ledger Co. and common A stock of Cortland Corporation; Long Island Daily Press Publishing Co. (hereinafter called Press), a corporation owning common stock of Ledger Co. and common A stock of Cortland Corporation; Samuel I. Newhouse, president and director of Ledger Co. and of Cortland Corporation and owner of large amount of stock of Advance, and William F. Hofmann, treasurer and director of Ledger Co. and of Cortland Corporation and owner of large amount of stock of Press. The defendants are Lucius T. Russell and Marian G. Russell, his wife. Both defendants answered the bill but Mrs. Russell did not appear at the hearings and no evidence was presented on her behalf. Lucius T. Russell is the defendant against whom complainants' charges and proofs were mainly directed and he conducted the defense to this action in person after his solicitor of record had withdrawn. All references hereinafter made to 'Russell' are intended to be made to him unless otherwise stated.

"The animus shown by Russell against Newhouse and Hofmann in this suit and throughout all his litigation against

them, is the outgrowth of a suit brought in this court by bill filed in January, 1935, against Ledger Co. by one Coates, a preferred stockholder of Ledger Co. At that time Russell and his family controlled Ledger Co. through ownership of nearly all of its common stock. In that suit Coates charged Russell with mismanagement of the corporation and with being indebted to the corporation in a large sum of money, and the court had appointed trustees for the corporation. Russell was not only in danger of losing control of the corporation but of being held accountable to the corporation for a large sum of money. In that situation Newhouse appeared and negotiations were had between him and Russell which culminated in a contract entered into April 24th, 1935, by Russell with Newhouse and Ledger Co.

"The agreement recited that it was the intent of the parties to endeavor to obtain discharge of the trustees appointed in the Coates suit and that Russell had agreed to relinquish control of Ledger Co. and to endeavor to effect adjustment and compromise of the claims asserted against him for indebtedness to Ledger Co. The agreement provided for the transfer from Russell and his family to Newhouse of 25,500 shares of Ledger Co. common stock (being a little more than 50% of such issue); for settlement of the Russell family indebtedness to Ledger Co., as it might be fixed and determined in the Coates suit, out of $110,000 to be supplied by Newhouse; for the election of Russell's son Edwin as a director of Ledger Co. and for the employment of Russell and Edwin F. Russell by Ledger Co. That agreement was the result of many conferences between Newhouse and his attorneys on the one side and Russell and his attorneys Merritt Lane and John J. Clancy on the other, and Russell entered into the agreement on the advice of his attorneys and with full knowledge of its contents.

"The day after the execution of the agreement the bill in the Coates suit was amended so as to name Russell, his wife and children parties thereto and to charge Russell with mismanagement of the corporation, the diversion of corporate funds for his own benefit to the extent of several hundred thousand dollars, and with unlawful payment of corporate funds to

members of his family. The relief then sought was an accounting from the defendants and the appointment of a receiver for the corporation. The defendants answered the amended bill through Merritt Lane, their solicitor, issue was joined and, on reference to a special master to take account of the defendants' indebtedness to the corporation, the master's report filed May 17th, 1935, stated Russell's indebtedness as $281,370.20; that of Mrs. Russell as $13,277.25 and that of Lucius T. Russell, Jr., as $1,808.37. The report also stated that they might be indebted to Ledger Co. in further sums on account of excessive salaries. Exceptions to the report were filed May 20th, 1935, on behalf of the Russells by Merritt Lane as solicitor.

"Immediately upon the execution of the aforesaid agreement, Ledger Co. filed a petition in the Coates suit, verified by Russell April 24th, 1935, reciting said agreement and stating that under the terms thereof control of Ledger Co. would pass from Russell and that any amount due from Russell or his wife to Ledger Co. up to $110,000 would be paid by Newhouse, which amount could be settled and determined in said suit, and praying that the trusteeship be terminated and the assets of the corporation be returned to it. Subsequently a petition was filed by the trustees praying for instructions with respect to the offer of settlement of the Russell indebtedness. On May 20th, 1935, a hearing was held by Vice-Chancellor Berry on the two petitions and on the exceptions to the master's report, of which hearing Russell had notice and at which he was represented by John J. Clancy appearing for Merritt Lane as counsel, and on that day an order was entered by the Vice-Chancellor after hearing all parties, approving as fair and reasonable in view of the master's report and of the exceptions thereto, Russell's offer to pay Ledger Co. $110,000 in full satisfaction of said indebtedness. The order also discharged the trustees subject to their accounting and dismissed the bill of complaint. Newhouse paid the $110,000 and on May 22d, 1935, the trustees filed a report stating that said sum had been paid to them. There was no appeal from the court's order and no petition for review has been filed.

"1. Russell threatens to institute legal proceedings for re-examination and adjudication of the aforesaid debt and to have a court determine that the manner in which said indebtedness was disposed of in the Coates suit was fraudulent and without his knowledge and consent. As I understand his position, he claims he denied that he and his family owed anything to Ledger Co. and that he never authorized withdrawal of exceptions filed to the master's report or the making of an offer of settlement of his indebtedness to Ledger Co., without having the existence and amount of such indebtedness ascertained by the Vice-Chancellor, and that he further claims he was informed by his counsel Merritt Lane, that Vice-Chancellor Berry had considered the report of the master, the testimony on which the report was based and the exceptions to the report, and that thereon the Vice-Chancellor had determined the existence of an indebtedness and the amount thereof, whereas in fact the Vice-Chancellor had not ascertained that any indebtedness actually existed but had merely determined that the alleged offer (made without knowledge or authority of defendants) should be accepted; that Russell did not know until the summer of 1938 of the manner in which said indebtedness had been disposed of. Russell's claim involves a charge of bad faith and unprofessional conduct on the part of Mr. Lane and Mr. Clancy. Death makes it impossible for Mr. Lane to refute that charge and Mr. Clancy testified that Russell was informed by Mr. Lane and by him that the offer of settlement was made unconditionally for the purpose of disposing of the debt claim and procuring discharge of the trustees and that Russell so understood it.

"The offer of settlement as contained in the Ledger Co. petition verified by Russell, and in the petition of the trustees was not made conditional on the court's finding, after examination of the master's report, the testimony and the exceptions, that that sum was actually due from Russell. It was offered as settlement of a disputed matter in litigation, by payment of a definite sum of money which the court could accept or reject in its discretion. I do not believe that Messrs. Lane or Clancy, who conferred with Russell on the offer and who spoke for him in the proceedings before the court, were

instructed by Russell to advocate the court's acceptance of the offer only on condition that the court should examine into the details of the Ledger Co. claim against the Russell family and, after such examination, find Russell's indebtedness to equal the sum offered. However, examination of the conclusions of the Vice-Chancellor on file in the Coates suit shows that in determining whether or not he should approve of Russell's offer as a fair or proper sum to be accepted in settlement of the total Russell debt of $296,000 as found by the master, he analyzed the master's report, considered the testimony before the master showing the credits claimed by Russell and also considered the amount the trustees in the Coates suit claimed was due from the Russells and, on the basis of figures stated by the Vice-Chancellor, he arrived at a balance of $110,811.08 due from the Russells. His conclusions show that he then considered the ability of Russell to satisfy any debt he might owe Ledger Co. and reached the decision that the acceptance of $110,000 was for the best interest of all concerned, and that he approved acceptance of the offer as a practical settlement of the issues raised on the exceptions.

"I have no doubt that Russell appreciated that payment of $110,000 on his behalf by Newhouse would free him from the possibility of being held for a greater liability and would result in restoration to Ledger Co. of its assets then under control of trustees, and that he would reap benefits which would accrue to him under his agreement with Newhouse. True, he would lose his dominant position with Ledger Co. but under the Coates suit he was likely to suffer that loss and more; and further I have no doubt that Russell was fully advised and informed by his counsel of the proceedings before Vice-Chancellor Berry and that he knew as a fact that $110,000 was offered for the court's approval in settlement of $296,000 debt the master had found due from him and his family to Ledger Co.

"May 23d, 1935, a few days after Newhouse had satisfied the Russell indebtedness pursuant to the court's order, Russell was present as a director at a meeting of directors of Ledger Co. At that meeting a resolution was adopted unanimously to accept the offer of settlement made by Russell of all claims

of the corporation against him and against Marian G. and Lucius T. Russell, Jr., on the terms set forth in the aforementioned order of the court and, pursuant to another resolution adopted at said meeting, mutual general releases were executed and delivered between Ledger Co., Russell, Marian G. Russell and Lucius T. Russell, Jr. At said meeting and pursuant to the terms of the agreement of April 24th, 1935, 25,500 shares of common stock of Ledger Co. were transferred by Russell to Newhouse, the balance of the total issue of 49,765 of such shares being retained by Russell and his family; Newhouse, Hofmann and Edwin F. Russell were elected to the new board of directors, and agreements by Ledger Co. employing Russell and Edwin F. Russell at substantial salaries were executed. That agreement has never been disavowed by Russell. On the contrary he and Mrs. Russell have allowed all complainants to invest money and to engage in business thereunder; they have accepted benefits under the agreement and suits they have instituted or threatened are based on the agreement. Russell disposes of the release of May 23d, 1935, by saying that it was executed upon the assurance of Mr. Lane and Mr. Clancy that Vice-Chancellor Berry had actually found that the Russell family owed Ledger Co. $110,000.

"Russell instigated a suit against Ledger Co. in the United States District Court for the district of New Jersey about September, 1937, brought in the names of one Delahanty and Marian G. Russell, wherein the relief prayed was for the appointment of a custodial receiver, injunction against transfer of assets and other relief. The allegations of the bill were verified by Russell's affidavit sworn to September 23d, 1937, which shows he was then aware of the manner in which his indebtedness to Ledger Co. was disposed of in the Coates suit, as well as of the provisions of the court's order therein of May 20th, 1935, although he now claims he did not acquire that knowledge until some time in 1938. After many days of hearing that suit was dismissed with prejudice by order dated November 18th, 1939.

"About September 2d, 1942, the defendants filed a bill of complaint in this court wherein Newhouse is named as de-

fendant and wherein Russell and his wife alleged their contention that the settlement of their indebtedness as disposed of in the Coates suit, was unauthorized by them and was without their knowledge and consent. The alleged object of that suit (among others) is to set aside an option agreement entered into September 16th, 1940, by Russell and his wife and Edwin F. Russell to sell to Newhouse 49% of the common stock of Ledger Co. and 100 shares of Class B common stock of Cortland Corporation, and to re-examine the amount of indebtedness of Russell, his wife and Lucius T. Russell, Jr., to Ledger Co. as of April or May, 1935. That suit is at issue on answer and counter-claim and complainants do not seek restraint against its further prosecution.

"2. As I have heretofore stated, pursuant to the agreement of April 24th, 1935, entered into between Russell and Newhouse and Ledger Co., Russell was employed by Ledger Co. June 16th, 1937, he was discharged for stated breaches of his employment agreement and he brought suit about August 20th, 1937, against Ledger Co. in the Essex Circuit Court for breach of his contract, claiming $300,000 damages. The suit came on for trial in June or July, 1939, and after he had put in his case he moved for and entered a voluntary nonsuit July 27th, 1939.

"In the Delahanty suit before mentioned one of the allegations therein was that Russell's employment contract was unlawfully terminated by Ledger Co. and had given rise to a claim of $300,000 by Russell against Ledger Co. for breach of contract, which suit as I have said was dismissed with prejudice.

"May 5th, 1938, Russell and wife instituted suit in Essex Circuit Court against Newhouse and Hofmann for conspiracy, wherein one of the charges was that Newhouse as controlling stockholder of Ledger Co. had caused that corporation to discharge him and he claimed $250,000 damages. The result of that suit was a discontinuance by consent September 16th, 1940, and the execution by Russell and wife of a general release to Newhouse, Hofmann and Ledger Co.

"Notwithstanding that Russell's claim for damages for breach of his employment contract had been an issue in three

separate unsuccessful suits and that he had executed a release of his claim September 16th, 1940, he instituted a fourth suit December 1st, 1942, in Essex Common Pleas against Ledger Co. and Newhouse for $300,000 damages based on said employment contract, which suit is now pending. Russell denies that the termination of his earlier three suits estops him from again litigating a claim for damages for alleged breach of his employment contract, because those suits did not result in a final adjudication on his contract and he claims that his release of September 16th, 1940, was executed under circumstances which amount to coercion, duress and false imprisonment and is therefore invalid, but he failed utterly to prove such circumstances.

"3. About August 25th, 1937, a suit was instituted in the United States District Court for the district of New Jersey in the name of Marian G. Russell against Cortland Corporation, which suit was instigated by Russell, and the prayer therein (among others) was for discovery and inspection of the books, records and accounts of Cortland Corporation and the appointment of a receiver for that corporation. That suit was tried in conjunction with the Delahanty suit and a third suit brought in the same court (at Russell's instigation) by Sauer and others against Newhouse, Hofmann and Ledger Co., wherein the allegations were practically the same as in the Delahanty suit. The trial of those suits lasted many days and the suit against Cortland Corporation was dismissed with prejudice April 3d, 1939, as was also the Sauer suit.

"After institution of the aforementioned pending suit in this court September 2d, 1942, against Newhouse by defendants, their solicitor therein demanded of Ledger Co. and Cortland Corporation information in detail concerning the affairs of those corporations and the opportunity to examine their books, and he threatened on behalf of Russell to institute other suits for the purpose of enforcing his demands.

"4. The agreement entered into April 24th, 1935, between Russell, Newhouse and Ledger Co. provided in paragraph 11 thereof, that at the 'closing' of said agreement the parties should cause a resolution to be adopted by the directors of Ledger Co. to execute on behalf of Ledger Co. all instru-

ments necessary to effect a change of beneficiary in certain policies of insurance on Russell's life theretofore assigned to and held by Ledger Co., so as to provide that on Russell's death the proceeds of such policies should be paid equally to Newhouse and Marian G. Russell, or in the event of her death to her heirs. No such resolution was ever adopted and in or about December, 1942, a suit was instituted in this court by defendants herein against Ledger Co., Newhouse and Hofmann wherein it is sought to compel the directors of Ledger Co. to adopt a resolution in conformity with the said provisions of the agreement of April 24th, 1935. That suit is now at issue.

"The complainants herein contend that prior to the aforesaid meeting of the directors of Ledger Co. held May 23d, 1935, Russell had been advised by Mr. Lane, his attorney, of legal reason why such resolution should not be adopted and that Russell and Newhouse thereupon agreed orally to cancel said provision. Russell denies that he had such advice from Mr. Lane and he also denies that he had agreed with Newhouse to cancel the aforesaid provision of the agreement of April 24th, 1935. He claims that the release dated September 16th, 1940, executed by him and Marian G. Russell to Ledger Co., Newhouse and Hofmann and accepted by them, specifically excepted from the operation thereof any claim that the defendants herein might have under the eleventh paragraph of the agreement of April 24th, 1935.

"Among those present at the meeting of directors of the Ledger Co. held May 23d, 1935, were Russell and his attorney Mr. Clancy, Newhouse and his general counsel Charles Goldman. The meeting was held on waiver of notice signed by all directors (including Mr. and Mrs. Russell), which waiver stated the several purposes of the meeting and contained no reference to the resolution referred to in paragraph 11 of the aforesaid agreement. At that meeting all resolutions and acts then necessary to complete the terms of said agreement were adopted or performed, but no resolution referring to said policies was offered or adopted, and the minutes of that meeting do not show any action with respect to said policies. Mr. Clancy, who acted with Mr. Lane as attorney for Russell,

testified that at such meeting the resolution in question was discussed with Russell and that it was stated that because of reasons which had been given Russell by Mr. Lane and on Mr. Lane's advice, it had been agreed by Russell and Newhouse that such resolution should not be adopted and Mr. Clancy's testimony was fully corroborated by Newhouse and Goldman. As to the reservation contained in the general release of September 16th, 1940, executed by Russell, the evidence is that on Russell insisting that such reservation be inserted in the prepared release it was agreed to because it was denied that he had valid claim that such resolution should have been adopted, and the provision reserving his claim was made innocuous by the qualifying words 'if any.' Of course Russell knew in May, 1935, that such resolution had not been adopted but he failed to take action to compel such adoption until December, 1942. He is in laches, for his delay has lost for the defendants in the suit brought by him in this court to compel the adoption of the resolution, the testimony of Mr. Lane.

"5. From the foregoing it will be seen that prior to 1942 Russell had instituted or was the instigator of five separate actions against complainants or one of them, all growing out of the suit of Coates v. Ledger Co. He was also the plaintiff in a suit for libel brought in Essex Circuit Court July 23d, 1940, against Newhouse and Ledger Co. wherein he claimed $250,000 damages, which suit he discontinued after the defendants therein had moved to strike his complaint. In none of the aforesaid suits did he succeed in establishing a meritorious cause of action. Since September, 1942, he has, as hereinabove stated, commenced two other suits in this court and one in the Essex Common Pleas against complainants, or one of them, and he has threatened to institute others.

"The proofs at the hearing in the instant suit show conclusively that Russell has stated on many occasions his intention to harass and torment the complainants, especially Newhouse, with litigation until he destroys Newhouse and his newspapers and that he has said he will never stop litigation against Newhouse until he has driven him out of Newark or until he (Russell) dies. He has also charged Mr. Clancy

as his attorney with having falsified facts to him and to the court and with having accepted a bribe from Newhouse for betraying him (Russell), which charges against a respected member of the bar are refuted by the evidence in the instant suit and are shown to be without any factual basis whatever.

"It was not long after the closing of the contract of April 24th, 1935, between Russell and Newhouse and Ledger Co. that Russell started to create trouble for Newhouse and Ledger Co. He sent preferred stockholders of Ledger Co. notice of a meeting to be held June 26th, 1936, to be addressed by him in which notice he denounced a financial statement of Ledger Co. for the fiscal year ending April 30th, 1936, as untrue and deceiving. On the advice and instruction of his counsel Mr. Lane, he sent another notice to said stockholders cancelling his previous notice. In May, 1937, some of Ledger Co.'s employees were on strike and were picketing Ledger Co. Russell admits making a speech to the strikers but denies that he then stated that they had been cheated by Newhouse; that Newhouse had swindled him out of his interest in the Ledger newspapers and if they (the strikers) would stand by him they together would drive Newhouse out of Newark. His attitude and admitted animus toward Newhouse lead me to credit the testimony that he made such statements and to disbelieve his denial.

"In June, 1937, Russell published and issued alleged newspapers called 'The Newark Leader' and 'The Sunday Leader,' of which papers he caused more than 50,000 copies to be distributed to the public and to advertisers who used the newspapers published by Ledger Co., and in February, September and November, 1939, and in June, 1940, he published and distributed further issues of 'The Newark Leader.' In the newspapers he thus circulated he scurrilously, viciously and vindictively attacked Newhouse and Ledger Co. and many individuals who had been connected with the Coates suit (including his own lawyers), charging them with fraudulent conduct in that suit and particularly charging Newhouse with perjury, bribery, theft and bad business morals. In August, 1937, he addressed a meeting of preferred stockholders of Ledger Co. at which he attacked Newhouse, Ledger Co., Cort-

land Corporation, Mr. Lane and Mr. Clancy and stated that he had instituted various suits against Newhouse, Ledger Co. and Cortland Corporation and urged the co-operation of those present in prosecuting those suits.

"While hearings in the instant cause were pending he inserted an advertisement in a Newark newspaper asking preferred stockholders of Ledger Co. to communicate with him and he admitted that he had prepared and sent to those stockholders a form of power of attorney running to him, authorizing sale of their stock and empowering him to deduct from the purchase price a sum 'for his services and expenses of all kinds, including lawyers' fees and costs.' His testimony in the instant suit and his argument at the close of the hearings disclose his intention to pursue and prosecute the complainants, especially Newhouse, to the limit of his time and financial ability. In his voluminous brief delivered to me, he has little to say on the issues involved and he devotes most of it to personal attacks on Messrs. Newhouse, Goldman and Clancy and on complainants' counsel.

"There is no doubt that this court has jurisdiction to prevent a multiplicity of suits brought with intent to harass and vex, and to protect the business of a complainant against unlawful injury and to restrain vexatious litigation, especially when the instigator of such suits has had his day in court, as Russell has had, to prove his claims and has failed, or the evidence shows he has no just cause of action, or that he is estopped by decree, release or laches.

"I conclude that complainants are entitled to restrain defendants from instituting or instigating any new proceeding in any court which will or might involve the examination or determination of the debt of the defendant Russell or his family to Ledger Co. approved and fixed by this court's order of May 20th, 1935, entered in the Coates suit; from instituting or instigating any new suit or action in any court for the purpose of seeking information concerning the affairs of Ledger Co. or Cortland Corporation, or examination of their books or records and from proceeding further in the action instituted by Russell on or about December 1st, 1942, in the Essex Common Pleas against Ledger Co. and Newhouse on

his claim for damages based on alleged breach of an employment contract; also that the defendants should be restrained from prosecuting the suit brought by Russell in this court in or about December, 1942, against Ledger Co., Newhouse and Hofmann wherein it is sought to compel the directors of Ledger Co. to adopt a resolution in conformity with provisions of paragraph 11 of the agreement of April 24th, 1935, entered into between Russell and Newhouse, relating to change of beneficiary in certain policies of insurance on Russell's life assigned to and held by Ledger Co. I do not think that a restraint should go against the defendants at this time from instituting other proceedings against complainants or any of them in the absence of a showing as to what such proceedings might be."

*Messrs. Osborne, Cornish & Scheck,* for the respondents.

*Mr. Lucius T. Russell (in propria persona),* for the appellants.

PER CURIAM.

The decree under review will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, FREUND, JJ. 13.

*For reversal*—None.